427 F.2d 179
 Cynthia WHITLEY and Will Whitley, Infants, By their Father and Next Friend, Alton Whitley, Thomas Allen Broome and Andrew Timothy Broome, Infants, By their Father and Next Friend, Glenn Broome, Billy Etheridge, Infants, By his Father and Next Friend, Wiley Etheridge, Timothy Williamson and Kimberly Williamson, Infants, by their Father and Next Friend, Earl Williamson, and all others similarly situated, Appellants,
v.
The WILSON CITY BOARD OF EDUCATION, George S. Willard, Superintendent of the Wilson City Schools, George H. Adams, Chairman of the Wilson City Board of Education, and Mrs. E. B. Jordan, R. E. Kirkland, Dr. E. C. Neeland, B. B. Plyler, Jr., Mrs. D. Stuart Walston and Mrs. William B. Young, Members of the Wilson City Board of Education, Appellees.
 No. 14116.
 United States Court of Appeals, Fourth Circuit.
 Argued March 5, 1970.
 Decided May 26, 1970.
 
 Thomas M. Moore, Wilson, N. C. (George A. Weaver and Moore, Moore & Weaver, Wilson, N. C., on brief), for appellants.
 Z. Hardy Rose, Wilson, N. C. (Lucas, Rand, Rose, Meyer & Jones, Wilson, N. C., on brief), for appellees.
 Before HAYNSWORTH, Chief Judge, and SOBELOFF, BOREMAN, BRYAN, WINTER, CRAVEN and BUTZNER, Circuit Judges, sitting en banc.
 CRAVEN, Circuit Judge:
 
 
 1
 This school desegregation suit is a class action brought pursuant to Rule 23, Federal Rules of Civil Procedure, by plaintiffs as next friends for their school age children, and as representatives of a class of 123 white children who live outside the City of Wilson, but within the Wilson City School District, and who have been assigned to attend previously all-black Barnes Elementary School. On August 29, 1969, the district court denied plaintiffs' motion for a preliminary injunction ordering the Wilson Board of Education to establish at once a unitary school system. The district judge held that since the children in the class were receiving an integrated education, they lacked standing to require determination of whether the entire school system was dual or unitary. We disagree and reverse.
 
 
 2
 The Wilson City School District is coterminous with Wilson Township and includes within its boundaries the City of Wilson. That part of the school district not included within the city's boundaries completely surrounds the city and has been divided into 11 zones by the school board for pupil assignment purposes. The plaintiffs are residents of zones 3 through 9. These geopgraphic zones constitute a continuous are averaging approximately two miles in width and extending approximately nine miles from an area northeast of the city clockwise around the city to an area southwest of the city. All of the white pupils in grades 1 through 7 who reside in zones 3 through 9 are currently assigned to previously all-black Barnes School, which is located at the approximate center of the arc southeast of the city. Other schools[1] in the system containing grades 1 through 7 are located in the city and on its outskirts, with some closer to the residences of the plaintiffs than is Barnes School. Only pupils enrolled in grades 1 through 7 who live in zones 3 through 9 are explicitly assigned by race. All elementary pupils residing in zone 1 are assigned to the Woodard School, and all elementary pupils in zone 2 are assigned to the Winstead School. Elementary pupils residing in zones 10 and 11 are assigned to Wells School. Those pupils enrolled in grades 1 through 7 who reside within the city boundaries are assigned to the schools which they previously attended.[2] A majority to minority transfer rule is in effect throughout the system so that Negroes may escape predominantly black schools if they so elect. Requiring plaintiffs' class of white pupils to leave their own neighborhood areas to attend Barnes has resulted in a racial mix of 39 percent white and 61 percent black at Barnes School. The racial ratio among all elementary pupils in the system is 54 percent white and 46 percent black.
 
 
 3
 The plaintiffs contend that they are being denied equal protection of the laws guaranteed to them by the Fourteenth Amendment to the Constitution because the school to which they are assigned is not a part of a unitary school system, but has instead been singled out for arbitrary mixing to appease the Department of Health, Education and Welfare and the federal courts. They urge that "while the desegregation of public schools may enhance the educational opportunity of the black students and thereby afford them equal protection of the laws, it may simultaneously decrease the educational opportunity of some white students and thereby deny them equal protection of the laws if in the process of such desegregation it permits or requires anything less than a unitary, non-racial school system now." Thus, plaintiffs complain that they have been forced to unfairly bear a burden which should be borne by the community at large. We find it unnecessary to decide whether integration at some "tipping" point diminishes the quality of the public education available to white students and thus imposes a unique burden upon them. It is sufficient for us to determine, and we so hold, that the Equal Protection Clause requires disestablishment of a former dual system and replacement with a unitary system, i. e., "one `within which no person is to be effectively excluded from any school because of race or color.'" Northcross v. Memphis Board of Education, 397 U.S. 232, 90 S.Ct. 891, 25 L.Ed.2d 246 (March 9, 1970) Burger, Chief Justice, concurring. We think plaintiffs' class has an equal protection right to be assigned to school on the basis of some neutral principle applicable to all pupils in the system and not to their class alone. The plaintiffs, therefore, seek redress for violation of a personal, present right. See Sweatt v. Painter, 339 U.S. 629, 70 S.Ct. 848, 94 L.Ed. 1114 (1950).
 
 
 4
 The district court held that "there will be no irreparable damage to any of the plaintiffs * * * by virtue of their attendance of the public schools pursuant to the provisions of the student assignment plan adopted by the Wilson City School Board * * *." We disagree. The injury demonstrated by the plaintiffs is sufficient, in this factual context, to satisfy the twofold requirements for standing to sue recently set forth by the United States Supreme Court. First, the plaintiffs must have a sufficient personal interest to impart the concrete adverseness required for an Article III "case or controversy." Second, the plaintiffs must be within the "zone of interests" protected by the constitutional guarantee that they invoke. Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (March 3, 1970); Data Processing Service v. Camp, 397 U.S. 167, 90 S.Ct. 838, 25 L.Ed.2d 200 (March 3, 1970). As we have noted above, the second requirement is met by these plaintiffs. With respect to the first, the record reveals that the plaintiffs first attacked the school board's assignment scheme soon after it was announced on May 1, 1969, by voicing their protest at the board's public meetings. When the board refused to alter its policies, the plaintiffs initiated this action on July 31, 1969. The plaintiffs clearly feel that they have been affirmatively injured by the board's disregard for the Fourteenth Amendment rights of the students in the system. This case is, therefore, a bona fide adversary proceeding as required by Article III.
 
 
 5
 The school board contends that the plaintiffs are not entitled to injunctive relief because (1) they have not exhausted their state administrative remedies and (2) they are "attempting to interfere with the discretionary statutory power [to assign pupils] reposed in the Board." Needless to say, any discretion which the board has in assigning pupils must be exercised in harmony with the Fourteenth Amendment rights of those pupils. When an assignment plan is unconstitutional, the assigned pupils have every right to attack it despite its discretionary nature. The Civil Rights Act, 42 U.S.C. § 1983, guarantees to any person within the jurisdiction of the United States equitable and legal redress for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. In Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Supreme Court said that "the federal remedy [under the Civil Rights Act] is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." Id. at 183, 81 S.Ct. at 482. In applying this principle to a school desegregation case the Court pointed out that "petitioners assert that respondents have been and are depriving them of rights protected by the Fourteenth Amendment. It is immaterial whether respondents' conduct is legal or illegal as a matter of state law. Such claims are entitled to be adjudicated in the federal courts." McNeese v. Board of Education, 373 U.S. 668, 674, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622 (1963). The Court declined in McNeese to require exhaustion of state administrative proceedings as a prerequisite to adjudication of a school case involving constitutional principles.
 
 
 6
 In sum, it is apparent that the Wilson City School Board is not operating a unitary system. We hold that although the plaintiffs are assigned to an integrated school, they nevertheless have standing to attack the defects in the board's overall assignment policies. The judgment of the district court is reversed and the case is remanded with instructions that the Wilson City School Board be ordered to submit for the district court's approval a plan for the implementation of a unitary school system in the City of Wilson School District to become effective not later than the beginning of the 1970-71 school year.
 
 
 7
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 Pupil assignment statistics for Wilson City School District's nine elementary schools (grades 1 through 7) for the 1969-70 school year are:
 School White Black Total

Adams -0- 370 370
Barnes 123 192 315
Elvie -0- 918 918
Hearne 326 90 416
Vick -0- 526 526
Vinson-Bynum 423 61 484
Wells 715 58 773
Winstead 629 34 663
Woodard 397 13 410
 _____ _____ _____
 Totals 2,613 2,262 4,875
 
 
 [2]
 The previous basis of assignment for these pupils does not appear in the record
 
 
 SOBELOFF, Circuit Judge (concurring):
 
 8
 In common with both Judge Craven and Judge Winter, I conclude that the plaintiffs have requisite standing, and wish to make a brief note of my own reasoning.
 
 
 9
 The Supreme Court explained in Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968), that
 
 
 10
 in terms of Article III limitations on federal court jurisdiction, the question of standing is related only to whether the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.
 
 
 11
 In Flast the interest of federal taxpayers in insuring that federal spending shall not breach the Establishment Clause was found sufficiently adverse to meet standing requirements. The interest of white pupils or their parents that their school system be unitary is no less responsive to this standard.
 
 
 12
 In my view white pupils may challenge an existing dual system, of which they are a part, without regard to where they are assigned. The general rule is that a complainant's interest must arguably be within the zone of interests protected by the invoked constitutional provision, or more simply stated, that one may not assert the rights of someone else — rights which he does not and may not possibly share. Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L. Ed.2d 192 (1970); Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943). This principle is, however, not constitutionally compelled, but was developed by the Supreme Court as a "rule of self-restraint for its own governance." Barrows v. Jackson, 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586 (1953); Data Processing, supra 397 U.S. at 154, 90 S.Ct. at 830. Thus the rule has been relaxed where critically necessary to vindicate the underlying constitutional provision. For example, whites have been afforded standing to raise the rights of blacks in resisting the impact of racially restrictive covenants. Barrows, supra. Similarly, one whose own conduct might be constitutionally proscribed can challenge, on First Amendment grounds, the overbreadth or vagueness of a statute, because of the danger of allowing such provisions to remain on the books. Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1964). See also Brewer v. Hoxie School Dist. No. 46, 8 Cir., 238 F.2d 91 (1956).
 
 
 13
 Turning to the application of standing doctrine to school desegregation cases, it is important to note that a school board's duty under Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) to put an end to all remnants of the dual system will no longer admit of any delay. Alexander v. Holmes County Board of Educ., 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969); Carter v. West Feliciana School Board, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1970). Although the obligation applies to all school boards, in the past, by and large, only those boards under administrative or court order have made any real effort toward compliance. In the light of this history and the urgency which the Supreme Court has imparted to desegregation, it is incumbent on us to apply flexible standing formulae in these cases. When the controversy is fit for judicial scrutiny and within the outer bounds of Article III, a federal court should not introduce unnecessary standing barriers, but should proceed to the merits and end further delay in the implementation of the mandate of Brown.
 
 WINTER, Circuit Judge (concurring):
 
 14
 I concur in the judgment of the Court.
 
 
 15
 Manifestly, the school to which plaintiffs are assigned is not part of a unitary system as the Constitution requires. Carter v. West Feliciana School Board, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1970); Alexander v. Holmes County Bd. of Ed., 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969); Green v. County School Bd. of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); Griffin v. County School Board, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964). While plaintiffs' residences and the availability of transportation which are relied upon as justification for their school assignment may justify their assignment to Barnes, these factors provide no justification for assigning plaintiffs to a unitary school while other white students are left in schools whose racial identity is undisturbed. I think that this unequal treatment establishes, first, that they have a sufficient interest at stake in the litigation to guarantee the concrete adverseness necessary to satisfy the case or controversy requirement of Article III, and, second, that their interest is within the zone of protection of the equal protection clause. I, therefore, conclude that they have standing to sue. Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970).
 
 
 16
 In the fashioning of relief, the Constitution will permit only the dismantling of the remaining components of the dual system. The process must begin immediately; exhaustion of remedies under North Carolina law is not required.