**BOARD OF EDUCATION OF INDEPENDENT SCHOOL DISTRICT 89, OKLAHOMA COUNTY, Plaintiff-Appellee,**

v.

**Raymond P. YORK and Yvonne J. York, Defendants-Appellants.**

**No. 134–70.**

United States Court of Appeals, Tenth Circuit.

July 29, 1970.

J. Harry Johnson, Oklahoma City, Okl. (Leslie L. Conner, Oklahoma City, Okl., on the brief) for plaintiff-appellee.

Clyde J. Watts, Oklahoma City, Okl. (Donald N. Bykerk, Oklahoma City, Okl., on the brief) for plaintiff-appellee. lants.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This appeal relates to another episode in the litigation over the desegregation of the Oklahoma City public schools. The district court entered a preliminary

injunction requiring the appellants to send their 14-year old son to Harding school and none other in the public school system. The appellants violated the order and were cited for contempt. After an evidentiary hearing, the district court made the injunction permanent, found the appellants guilty of violating the preliminary injunction, and sentenced them to fine and imprisonment. On this appeal they attack both the validity of the injunctive orders and their contempt sentences.

On August 13, 1969, the federal district court in the case of Dowell v. Board of Education approved a School Board plan changing the attendance area for the Harding school during the 1969–1970 school year so as to include the residence of the appellants and their son. We vacated that order and Justice Brennan stayed our order. The Supreme Court on December 15 granted certiorari, vacated our order, and remanded the case. 396 U.S. 269, 90 S.Ct. 415, 24 L.Ed.2d 414. The August 13 district court order has remained in effect during the 1969–1970 school year.

Before the boundary change the appellants were in the attendance area of Taft school. After the change they insisted on sending their son to Taft. The Board notified them in writing that after the end of the first quarter, November 7, 1969, the unauthorized enrollment of their son at Taft had to be terminated. The appellants persisted in sending the boy to Taft. The Board then brought a suit in federal court for an injunction. The preliminary injunction was issued on January 14, 1970, and in addition to the matters mentioned it ordered the United States Marshal to determine if the boy attempted to attend Taft and, if he did so, to take him into custody, hold him during school hours, and then return him to his parents.

On January 15 and 16 the mother escorted the boy to Taft and he attended classes. On January 19 the two of them were intercepted by a deputy United States Marshal on the Taft school grounds and the boy was taken into custody as directed in the preliminary injunction and later released to his parents. On January 23, after a hearing, the court made the injunction permanent and found the parents in contempt.

The spectacle of a United States Marshal taking a 14-year old boy into custody for attempting to attend school does not appeal to us. Neither does the conduct of the mother in flaunting the orders of a federal court by producing an incident where the presence of representatives of the news media indicates action for publicity purposes. We have here an isolated occurrence which we believe could and should have been handled by the School Board without seeking the aid of the court. The recalcitrance of one family hardly poses a threat to the duty, power, and ability of the School Board to carry out the federal court decree.

Be that as it may, the federal court granted a preliminary injunction and the appellants violated it. In Dunn v. United States, 10 Cir., 388 F.2d 511, we considered a situation wherein counsel for a litigant was held guilty of contempt for violation of a temporary restraining order. We held the temporary restraining order invalid in Hyde Construction Company v. Koehring Company, 10 Cir., 388 F.2d 501, cert. denied 391 U.S. 905, 88 S.Ct. 1654, 20 L.Ed.2d 419. We also said that the invalidity of that order did not destroy the contempt conviction because the court had jurisdiction of the subject matter and the person and "its orders must be obeyed until reversed for error by orderly review." 388 F.2d at 513. In the case at bar, the parents did not seek review of the preliminary injunction. They chose to violate it. Accordingly, they were in contempt if the federal district court had jurisdiction.

The appellants insist that the district court lacked subject-matter jurisdiction. No good purpose would be served by any review of the many cases holding that segregated public education is a denial of equal protection and that

federal courts have the duty and responsibility to prevent such discrimination. The history of the Oklahoma City school litigation has been detailed elsewhere and need not be repeated. It suffices to say that after our decision in Board of Education of Oklahoma City Public Schools v. Dowell, 10 Cir., 375 F.2d 158, cert. denied 387 U.S. 931, 87 S.Ct. 2054, 18 L.Ed.2d 993, approving the pairing of certain schools to prevent .segregation, the district court found that changed conditions would not produce the desired result and ordered the School Board to give further consideration to the matter. The School Board proposed a plan which made the boundary changes with which we are concerned and the court approved the plan. In so acting the court had subject-matter jurisdiction. That jurisdiction carries over to actions necessary and proper to effectuate the judgment entered.

■ Appellants say that the boundary changes are local administrative orders made under 70 O.S.A. § 4–22 and that the federal court has no jurisdiction with regard thereto. The argument overlooks the fact that the School Board is under a duty to obey the Constitution, U.S.Const. Art. VI, cl. 2, and the order of the district court. It has a federal right "to be free from direct and deliberate interference with the performance of the constitutionally imposed duty." Brewer v. Hoxie School District No. 46, 8 Cir., 238 F.2d 91, 99. Cf. Bohlander v. Independent School District Number One of Tulsa County, Oklahoma, 10 Cir., 420 F.2d 693, 694. The right arises under the Constitution and is within the jurisdictional grant of 28 U.S.C. § 1331. We note in passing that no question is raised over the jurisdictional amount, and that the district court expressly found that it was present.

■ So far as the merits of the injunctive orders are concerned, the appellants make a collateral attack on the validity of the district court orders in the underlying case. It is not necessary to discuss again those orders. The order approving the Board's plan for boundary changes was valid and effective during the 1969–1970 school year. Only one aspect thereof need be mentioned. The appellants contest the orders on the ground that they are not a proper exercise of jurisdiction by the district court. The injunction was "necessary and appropriate" in the aid of the court's jurisdiction over the underlying segregation problems. See the All Writs Act, 28 U.S.C. § 1651.

■ The appellants point out that federal district court jurisdiction is statutory and rely on provisions of the 1964 Civil Rights Act as prohibiting the action taken. See 42 U.S.C. § 2000c et seq. Section 2000c(b) says that desegregation "shall not mean the assignment of students to public schools in order to overcome racial imbalance." Section 2000c–6(a) (2) provides that nothing in the Act empowers a federal court to "issue any order seeking to achieve a racial balance in any school by requiring the transportation of pupils or students from one school to another or one school district to another in order to achieve such racial balance." Nothing in the 1964 Act forbids the court to approve a School Board plan instituting boundary changes designed to eliminate unconstitutional discrimination. In any event, the quoted provisions cannot be interpreted to frustrate the requirements of the Constitution. United States v. School District 151 of Cook County, Illinois, 7 Cir., 404 F.2d 1125, 1130. The equitable powers of the federal courts exist independently of the 1964 Act. United States v. Jefferson County Board of Education, 5 Cir., 372 F.2d 836, 880, affirmed en banc, 380 F.2d 385, cert. denied Caddo Parish School Board v. United States, 389 U.S. 840, 88 S.Ct. 67, 19 L. Ed.2d 103. Whatever may be the ultimate effect of the mentioned provisions of that Act on the problem of school desegregation, we find nothing therein which inhibits the boundary changes in the circumstances existing in Oklahoma City. We are convinced that both the

preliminary and permanent injunctions were valid and should have been obeyed.

The appellants admit that Yvonne J. York refused to comply with the preliminary injunction and continued to cause her son's attendance at the Taft School. They contend that the father, Raymond P. York, did not violate the order and they rely on the provision of 32 O.S.A. § 9(1) that "[n]either husband nor wife, as such, is answerable for the acts of the other."

■ The preliminary injunction restrained the appellants from sending their son to Taft, ordered them to remove him from Taft, and ordered that if the son attended the Oklahoma City school system he do so at Harding. The father filed a statement in which he "advises the Court of his intent to comply, under protest with Court's Order; and further respectfully suggests that the Defendant, Yvonne J. York has not joined in this compliance and does not intend to be bound thereby." Neither the father nor the mother testified at the contempt hearing. The preliminary injunction imposed an affirmative burden on both to send their son to Harding rather than Taft if he continued in the public schools. The father does not claim that he did anything to comply therewith. Instead, he stood by and apparently condoned the violation by his wife. His failure to obey the order was his own act, not that of his wife. The district court properly held him in contempt.

■ The district court imposed a sentence of 30 days in jail and a $1,000 fine against each defendant. This is in clear violation of 18 U.S.C. § 401 which provides that a court may punish a criminal contempt "by fine or imprisonment." It cannot sentence to both. See In re Bradley, 318 U.S. 50, 51, 63 S.Ct. 470, 87 L.Ed. 500, and In re Osborne, 9 Cir., 344 F.2d 611, 616. On May 22, 1970, the district court corrected the erroneous sentences by eliminating the jail term and imposing a $1,000 fine on each. The appeal was then pending in this court. Ordinarily when a case is appealed the district court loses jurisdiction over it. Aune v. Reynders, 10 Cir., 344 F.2d 835, 841. We need not consider whether this rule is changed by the provision of Rule 35, F.R.Crim.P., which authorizes the correction of an illegal sentence at any time, because we have both the authority and responsibility to determine that the power to punish for contempt is not abused and to revise contempt sentences when necessary. Cheff v. Schnackenberg, 384 U.S. 373, 380, 86 S.Ct. 1523, 16 L.Ed.2d 629, and Green v. United States, 356 U.S. 165, 188, 78 S.Ct. 632, 2 L.Ed.2d 672.

■ From a consideration of all factors present, we are convinced that the penalties imposed are harsh and excessive. Accordingly, the sentence of Raymond P. York is reduced to, and fixed at, a fine of $250 and that of Yvonne J. York is reduced to, and fixed at, a fine of $500. In each case the payment of the fine shall be upon execution.

The injunctive orders and the adjudications of contempt are affirmed. The case is remanded to the district court for the imposition of the fines which we have mentioned. Each party will bear his own costs.