**AKRON BOARD OF EDUCATION and Conrad C. Ott, Plaintiffs-Appellants,**

v.

**STATE BOARD OF EDUCATION OF OHIO et al., Defendants-Appellees.**

No. 72-2075.

United States Court of Appeals,
Sixth Circuit.

Argued April 6, 1973.

Decided Jan. 15, 1974.

---

John M. Glenn, Akron, Ohio, for appellants; Edward O. Erickson, Akron, Ohio, on brief.

John F. Ray, Jr., Cleveland, Ohio, on brief for appellees, William R. McClenathen, Akron, Ohio, of counsel.

Before WEICK and EDWARDS, Circuit Judges, and PRATT,* District Judge.

EDWARDS, Circuit Judge.

Plaintiffs, Akron Board of Education and its Superintendent, Conrad C. Ott, appeal from an order dismissing their complaint. The complaint filed before the United States District Court for the Northern District of Ohio sought an injunction against the Ohio State Board of Education (and its members as individuals) restraining the transferring of an area (Sackett Hills) of the previous jurisdiction of the Akron Board of Education to an adjoining school district. Plaintiff's complaint is founded upon 42 U.S.C. § 1983 (1970), 28 U.S.C. § 1343 (1970), and the Fourteenth Amendment to the United States Constitution. It seeks both a declaratory judgment and injunctive relief.

The complaint alleged:

In the case of the proposed transfer of Sackett Hills,. * * * unlawful policies and procedures have resulted in approval of a transfer by the defendant State Board of Education, effect of which will or may be to compel plaintiffs to take action in violation of constitutionally and statutorially [sic] protected rights of children in the Akron City School District.

12. Under the proposed transfer of Sackett Hills, children attending public schools will be permitted to attend elementary, junior high, and senior high schools which are all-white in composition instead of attending North Senior High School which is approximately 24% black, Jennings Junior High School which is approximately 31% black, Findley Elementary School which is approximately 63% black, and Harris Elementary School, in the case of some students, which is approximately 7% black.

13. Defendants State Board of Education, their defendant members, and the defendant Essex have exercised the authority otherwise given them by law in an unlawful, discriminatory, and arbitrary manner in violation of the Fourteenth Amendment of the United States Constitution and Title 42, United States Code, Sec. 1983, in that:

A. By reason of the practices and policies of said defendants, the plaintiff Akron School Board has purportedly been required to forfeit the Sackett Hills area from the Akron School District, although there has been no failure to meet requirements of state law respecting transportation and education of school age children therein and notwithstanding the absence of any legal basis to impose such a forfeiture even if there had been a failure to meet any such requirements. Such action by said defendants has been taken on the ground that the plaintiff Board has failed to match the standard of transportation offered to children within such area which a suburban school district can allegedly maintain;

B. The policies and practices of said defendants impose a standard of transportation for urban school districts which impose the higher costs upon them than obtain on a per capita basis in suburban school districts notwithstanding the fact that the State of Ohio does not com-

* Honorable Philip Pratt, United States District Judge for the Eastern District of Michigan, sitting by designation.

pensate for such difference and that state law does not provide or purport to provide legal authority for the defendant State Board of Education to require the same standard of transportation service;

C. The policies and practices of the Defendant State Board of Education permit the use of a standard of comparative convenience in transportation of children to non-public schools as required under the provisions of Revised Code Section 3327.01 to be the basis whereby patrons desiring to send their children to all-white public schools outside an urban district in preference to racially mixed public schools within such a district may do so;

D. The policies and practices of said defendants by failing to adopt lawful standards has resulted in the case of the proposed Sackett Hills transfer from the Akron City School District an official state action to cause children from an all-white area to attend public schools on a basis other than the proximity of their residence thereto for reasons not equally applicable to all.

14. Plaintiffs will suffer immediate and irreparable harm in the event that the defendant class members or their attorney, the defendant Mc-Clenathen, file and maintain any action in the state courts seeking to compel the plaintiffs to give effect to the unlawful approval of their detachment petition by the defendant State Board of Education of Ohio. The effect of any such action by said defendants would be to give an evidentiary basis for suit by other patrons from the Akron City School District that children otherwise within the district are assigned to attend public schools by reason of race. Such a suit would require great expense and effort on the part of the plaintiffs to defend and would or might result in an order causing a complete alteration of attendance areas historically established without regard to race. Any such alteration of attendance areas would result in great and incalculable expense and would deprive children in the Akron City School District of educational programs necessarily eliminated or curtailed on account thereof or result in an increase in tax levies for Akron taxpayers, or both.

This is a small case in everything except the legal principles involved. The area, Sackett Hills, which the defendant State Board of Education has approved transferring from the Akron School District to an adjacent suburban school district is small. The number of students involved is only 29 (of whom 6 were attending Akron Public Schools).

The facts alleged by the Akron Board are that without any lawful educational justification, white students are being moved by the transfer from desegregated schools in Akron to all white suburban schools, thereby decreasing the tax money available to the Akron School Board and tending to deprive Akron school students of their constitutional right to attend nonsegregated schools. Obviously one such transfer has a very limited influence upon the rights of students to attend nonsegregated schools. Obviously, also, many such transfers based upon such a precedent could have a disastrous effect.

The legal principle involved is the provision in the Fourteenth Amendment to the Constitution of the United States which prohibits any state from denying any citizen the equal protection of the laws.

Thus far the defendants have filed no answer to this complaint. They moved to dismiss it on the grounds that the complaint stated no claim upon which relief could be granted and that the District Court had no jurisdiction over the action. The District Judge (without, of course, ever reaching the merits of the action) granted the motion to dismiss, holding that the federal court had no jurisdiction because neither of the plaintiffs had standing to sue.

We hold that under the facts alleged and stipulated the plaintiffs have standing to bring this action, that the District Court has jurisdiction to enforce the Fourteenth Amendment, that the defendants, members of the State Board of Education, are not immune from suit, and that in the present posture of this case abstention is neither required nor appropriate.

We note, of course, that the State Board has contended, and presumably will do so before the District Court, that its transfer decision was made on grounds of convenience of transportation and had no racial motivation at all. This may be so, but thus far the State Board has not even filed an answer to allege these contentions and, of course, there has been no federal adjudication of the conflicts of fact.

Standing to sue "is only a rule of practice" (Barrows v. Jackson, 346 U.S. 249, 257, 73 S.Ct. 1031, 1035, 97 L. Ed. 1586 (1953)) designed to enforce the constitutional rule that the United States Courts have jurisdiction only of "Cases" or "Controversies." U.S.Const. art. III, § 2, cl. 1. In its most general form the rule may be stated as holding that no one who is not a member of the class claimed to be offended may bring an action to protect the constitutional rights of such a class. *See* Barrows v. Jackson, 346 U.S. 249, 255, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953); Coleman v. Miller, 307 U.S. 433, 464–467, 59 S.Ct. 972, 83 L.Ed. 1385 (1939) (Frankfurter, J., separate opinion); Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). The general rule seeks to guarantee that every suit will truly be an adversary proceeding. Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

Where, however, there is a close relationship between the plaintiffs who seek to bring an action and the class of persons whose constitutional rights are claimed to be violated, standing to sue has frequently been found. NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L. Ed.2d 405 (1963); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L. Ed. 1070 (1925); Whitley v. Wilson City Board of Education, 427 F.2d 179 (4th Cir. 1970); Board of Education v. York, 429 F.2d 66 (10th Cir. 1970); Brewer v. Hoxie School District No. 46, 238 F.2d 91 (8th Cir. 1956). *Cf.* Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

In the *Society of Sisters* case, *supra,* a private parochial school brought action to enjoin the enforcement of a state law which required all parents to send their children to public schools. The Supreme Court held the challenged act unconstitutional thereby recognizing the right of the plaintiff school to protect the constitutional rights of the pupils of the school and their parents. It is, of course, clear that the impact of the state action there protested was greater upon the school itself than is the state action protested in our instant suit. But in our instant case, not only are children transferred, but tax dollars otherwise due the Akron School Board are transferred too. The difference between the *Society of Sisters* case and this case as to standing seems to be a matter of degree rather than of legal principle.

In NAACP v. Button, *supra,* the Supreme Court recognized the right of an organization to defend the constitutional rights of its members. NAACP v. Button, *supra* 371 U.S. at 428, 83 S.Ct. 328, 9 L.Ed.2d 405.

We recognize, of course, that there is force to the argument of the District Judge that parents of school children whose rights are alleged to be abridged would be wholly proper plaintiffs as to whom the standing argument could not be raised. But it should be noted that the small area concerned and its minimal present impact would be much less likely to come to the attention of said parents or arouse their concern than it would to come to the attention of and arouse the concern of the School Board, which is the immediate object of the order al-

leged to be unconstitutional. Thus if jurisdiction is refused in a precedent-setting case because the potential litigants, alert to the possible constitutional abuse, are denied standing, quite a bit of the unconstitutional camel may be in the tent before the tent's less alert occupants are awakened.

■ We believe here that in terms of loss of territory and tax dollars and in terms of identity of interest with the asserted rights of the pupils and their parents, the Akron Board of Education and its Superintendent are true adversary parties and that their complaint states a "Case" or "Controversy" to enforce the Fourteenth Amendment within the intendment of Article III of the U. S. Constitution.

■ Over and above these considerations there is still a third basis for standing for these plaintiffs. Where plaintiffs' complaint has as yet not been heard on granted motion to dismiss, we assume its well-pleaded allegations to be true. Under this assumption the Akron Board and its Superintendent have been commanded by action of the state board to participate in conduct leading in the direction of segregation of its school system. Such conduct would place the Board and its members and its Superintendent in the position of violating the Fourteenth Amendment to the United States Constitution. It would subject plaintiffs to being defendants in a suit to restrain conduct which they appear to abhor and which they avow to be unconstitutional. At least theoretically it might subject individual members of the Board and the Superintendent to suits for damages under the Civil Rights Act. 42 U.S.C. § 1983 (1970).

In Brewer v. Hoxie School District No. 46, 238 F.2d 91 (8th Cir. 1956), the Eighth Circuit recognized the right of a school board to resist in the federal courts pressures upon it to prevent its performance of its duties in accord with the Constitution of the United States:

Turning first to the question of federal jurisdiction, it is the position of the appellees that federal jurisdiction of the case exists under the general provision of the federal law, in that the complaint presents a civil action arising under the Constitution and laws of the United States wherein the amount in controversy exceeds $3,000, 28 U.S.C.A. § 1331, and it arises under the Supremacy Clause of the Constitution implementing the Fourteenth Amendment, and the corollary or related constitutional provision imposing an oath or affirmation upon state officers to support the Constitution.

Appellees contend that as they are under a constitutional duty to support and obey the Fourteenth Amendment and to accord equal protection of the law in their operation of schools, they have a federal right to be free from wrongful interference with the performance of that duty. They say they rest their claim of a federal constitutional right squarely on the fundamental and pervasive provisions of the Constitution and statutes, and declare that the nubbin of their case against defendants in the federal court is the jurisdiction which stems from the Fourteenth Amendment in conjunction with the Supremacy Clause of the Constitution and the cause of action under section 1331 to which they give rise. That the right of the members of the school board to be free from interference with their performance of a duty which the Constitution itself imposes on them derives directly from the Supremacy Clause and the related constitutional provision imposing upon the state officers an oath or affirmation to support the constitution and it is a federal right. The school board is attempting to obey and apply the federal law laid down by the Supreme Court in the Brown case and the defendants attempt and threaten to subvert and prevent it.

Both of the learned and experienced district judges who rendered decision in the case reached the conclusion that the complaint disclosed that federal

jurisdiction existed under the provisions of the general law relied on as above stated, and we are in accord with that conclusion.

Although the defendants contended below and reassert here that the acts complained of against them were acts upon which a suit could have been predicated in the state court and that the acts were of state and not federal cognizance, the complaint was not so drawn. The conspiracy it alleges is a conspiracy to violate a federal right, and recourse to the federal court for its vindication will not be denied merely because a cause of action might likewise exist in the state court. United States v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588; United States v. Waddell, 112 U.S. 76, 5 S.Ct. 35, 28 L.Ed. 673; Romero v. Weakley, 9 Cir., 226 F.2d 399; Dyer v. Kazuhisa Abe, D.C. Hawaii, 138 F.Supp. 220. Brewer v. Hoxie School District No. 46, 238 F.2d 91, 95 (8th Cir. 1956). (Footnotes omitted.)

The legal conclusions concerning standing, set forth above in the *Hoxie School* case, are directly applicable to the standing issue in our instant case and we adopt the Eighth Circuit's reasoning in this regard.[1]

In a still more authoritative statement on this score (albeit in a footnote), the United States Supreme Court held that a local school board in New York State had standing to bring an action in federal court to test the validity of a New York State Statute requiring school boards to lend textbooks to private (including parochial) schools.

Appellees do not challenge the standing of appellants to press their claim in this Court. Appellants have taken an oath to support the United States Constitution. Believing § 701 to be unconstitutional, they are in the position of having to choose between violating their oath and taking a step —refusal to comply with § 701—that would be likely to bring their expulsion from office and also a reduction in state funds for their school districts. There can be no doubt that appellants thus have a "personal stake in the outcome" of this litigation. Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

Board of Education v. Allen, 392 U.S. 236, 241 n. 5, 88 S.Ct. 1923, 1925, 20 L.Ed.2d 1060 (1968).

We hold that in the unique facts of this case the Akron Board of Education has standing to bring this action.

We recognize (in spite of the authority cited above) that the cases argued by the dissent (City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Johnson v. City of Cincinnati, 450 F.2d 796 (6th Cir. 1971)) holding that municipalities are not "persons" for purposes of the Civil Rights Acts might be extended to apply to state agencies like school boards so as to deprive the Akron Board of standing to sue. While this suit is brought in the name of the Akron Board of Education as a body politic, it is also filed in the name of Conrad C. Ott, the School Superintendent. Mr. Ott clearly is a "person" within the meaning of 42 U.S.C. § 1983 and 28 U.S.C. § 1343 (1970), as, of course, are the members of the Board of Education who on motion on remand may be permitted to be added as plaintiffs.[2]

---

1. Plaintiffs have not pled a cause of action under 28 U.S.C. § 1331 (1970) (federal question jurisdiction) perhaps because the tax funds involved may not reach the jurisdictional amount required.

2. *See* Moor v. County of Alameda, 411 U.S. 693, 712, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); Egan v. City of Aurora, 365 U.S. 514, 81 S.Ct. 684, 5 L.Ed.2d 741 (1961); Myers v. Anderson, 238 U.S. 368, 35 S.Ct. 932, 59 L.Ed. 1349 (1915); Tinker v. Des Moines Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); Birnbaum v. Trussell, 347 F.2d 86 (2d Cir. 1965).

We have no doubt concerning the jurisdiction of the District Court to hear and decide a case asserting facts which, if true, would represent a violation of the Fourteenth Amendment. *See* 28 U.S.C. § 1343; 42 U.S.C. § 1983 (1970).

It is doubtless true that the state as such (and perhaps the State Board of Education as well) are immune from suit, but, of course, injunctive relief may be had to restrain members of a Board of Education (state or local) from violating the Fourteenth Amendment to the United States Constitution. Swann v. Board of Education, 402 U.S. 1, 15, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971); Brown v. Board of Education of Topeka (II), 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955); Bradley v. Milliken, 484 F.2d 215 (6th Cir. 1973). In the instant case the defendants include the individual members of the State Board and the State Superintendent.

While these considerations call for reversal of the District Court's judgment dismissing this cause of action, abstention might be suggested until state avenues of relief have been exhausted. *See* Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Lake Carriers Assn. v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257.

The case of State ex rel. Zellner v. Board of Education, 34 Ohio St.2d 199, 297 N.E.2d 528 (1973), decided after our instant appeal was argued, answers this argument. In it the Supreme Court of Ohio held in a fact situation pertaining to Cincinnati which is very similar to our instant case:

> Considerations of orderly procedure, comity, ultimate judicial economy, and the desire to avoid a "collision course," demand that a state court action dealing with federal civil rights be heard first in the federal forum where a similar action had been previously instituted. State ex rel. Zellner v. Board of Education, *supra*, at 199, 297 N.E.2d at 529.

In view of Judge Weick's dissenting opinion, a summary of the holding of the court (as stated in this opinion and the concurring opinion of Judge Pratt) may be in order:

1) Plaintiffs, Akron Board of Education and Conrad C. Ott, have standing to sue.

2) The District Court has jurisdiction of the case under 42 U.S.C. § 1983 and 28 U.S.C. § 1343 since (at least) plaintiff Conrad Ott is a "person" within the meaning of these sections.

3) The individual defendants (members of the State Board of Education) are not immune from injunctive relief if the facts developed at trial prove a Fourteenth Amendment violation.

I am authorized to state that this summary has the full concurrence of Judge Pratt.

The judgment of the District Court is reversed and the case is remanded for further proceedings consistent with this opinion.

PRATT, District Judge (concurring in part and dissenting in part).

Agreeing as I do with Judge Edwards that the plaintiffs herein have standing to sue, I concur in the remand of this case to the District Court so that the plaintiffs herein may have an opportunity to amend. (See 3 Moore's Federal Practice § 15.09).

I also agree with Judge Weick that the Akron Board of Education is not a "person" within the meaning of 42 U.S.C. § 1983 and 28 U.S.C. § 1343 (1970). However, a remand would permit plaintiffs, if they choose, to add parties plaintiff to overcome this obstacle.

Further, plaintiffs should be permitted to amend to allege jurisdiction under 28 U.S.C. § 1331. It appears from the last paragraph of plaintiffs' Brief that plaintiffs considered they were precluded from asserting that jurisdictional basis in view of the finding of the District

Court that plaintiffs lacked standing.[1] The standing issue being otherwise decided here, plaintiffs can now pursue that avenue.

WEICK, Circuit Judge (dissenting).

Akron Board of Education and Conrad C. Ott, as Superintendent of Schools, filed suit in the District Court against the State Board of Education of Ohio, and others, seeking to invalidate a decision of the State Board approving the transfer of a small segment of territory in the Akron School District, known as Sackett Hills, to the adjoining Summit County Boston-Northampton School District.

The complaint was filed under the Civil Rights Act, 42 U.S.C. § 1983 and 28 U.S.C.A. § 1343, alleging in substance that the School Board's and Superintendent Ott's civil rights and constitutional rights under the Fourteenth Amendment to the Constitution were violated by the transfer since it affected the racial balance of the schools to the extent of six pupils and it would deprive the School Board of tax revenues.

The parties filed a written stipulation, in which they agreed to the facts.

The State Board filed a motion to dismiss the amended complaint on the grounds (1) that the Akron Board did not have standing to maintain the suit, and (2) that the Court was without jurisdiction. The District Court, in a well-considered opinion, held that the plaintiffs lacked standing to sue, and that the Court was without jurisdiction. It dismissed the complaint. The plaintiffs have appealed. I would affirm.

In essence, this suit was brought by one body politic of the State of Ohio against another body politic of the same state, the latter being the superior of the former. No precedent for such a suit has been found. We will show that federal law, as declared by the Supreme Court, does not entertain such suits.

The only remedy of the Akron School Board is to review the decision of the State Board under Section 2506.01 of Ohio Rev.Code (1972 Supp.) which provides in relevant part:

"Every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department or other division of any political subdivision of the state may be reviewed by the common pleas court of the county in which the principal office of the political subdivision is located . . . ."

Section 2506.04, Ohio Rev.Code (1972 Supp.), vests full power and authority in the common pleas court to determine all questions, including alleged constitutional violations. It provides:

"The court may find that the order, adjudication or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication or decision, or remand the cause to the officer or body appealed from with instructions to enter an order consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law pursuant to sections 2505.1 to 2505.45, inclusive, of the Revised Code."

1. "Finally, even if 28 U.S.C. Section 1343 were to be read so narrowly as to prevent the plaintiffs from bringing their action without the requirement of a jurisdictional amount, the provision of 28 U.S.C. Section 1331 would permit them to maintain the action. Although this additional jurisdictional basis could have been asserted as was the case in Brewer v. Hoxie School District No. 46, 238 F.2d 91 (8th Cir. 1956), the court below should have permitted an amendment for the purpose of establishing jurisdiction thereunder if necessary. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Sikora v. Brenner, [126 U.S.App.D.C. 357, 379 F.2d 134] supra. That it did not do so is clearly attributable to its belief that in any event the plaintiffs lacked standing." (App. brief pp. 19-20).

The Akron Board of Education is a body politic and corporate entity, organized and existing by virtue of Ohio Rev. Code, Sec. 3313.17. It is empowered to manage and control education in its district and it has the power to sue and to be sued with respect to the rights and responsibilities conferred upon it by law.

The State Board of Education of Ohio likewise is a body politic and corporate organized and existing by virtue of Ohio Rev.Code, Secs. 3301.01.1 to 3301.07.1. It has general supervisory power over the system of education throughout the state. Ohio Rev.Code, Sec. 3301.07. In addition, the Legislature delegated to the State Board special power with respect to the transfer of portions of one school district to another school district. Section 3311.24, Ohio Rev.Code, provides in relevant part:

"If the board of education of a city school district . . . deems it advisable to transfer territory from such district . . . to a county school district, or if a petition, signed by seventy-five per cent of the qualified electors residing within that portion of a city or exempted village school district proposed to be transferred voting at the last general election, requests such a transfer. . . .

"Not later than the first day of September the state board of education shall either approve or disapprove a proposed transfer of territory filed with it and provided by this section and shall notify, in writing, the boards of education of the districts affected by such proposed transfer of territory of its decision.

"If the decision of the state board of education is an approval of the proposed transfer of territory then the board of education of the district in which the territory is located shall, within thirty days after receiving the state board of education's decision, adopt a resolution transferring the territory . . . ."

Early in 1972 some fifty-two residents (all of whom are white) of an area in Akron known as Sackett Hills, caused a petition to be filed with the State Board of Education, seeking the transfer of that area from the Akron City School District to the adjacent rural school district. The residents of Sackett ·Hills, the area sought to be transferred, resided near the north corporation line of the City of Akron, but within its boundaries.

On May 23, 1972, a hearing was held in the offices of the Akron Board of Education on the petition to transfer the area. The hearing took place before a Referee appointed pursuant to the state Administrative Procedure Act, Chap. 119, Ohio Rev.Code, and Ohio Rev.Code § 3311.24, at which hearing the parties offered evidence and exhibits. The Referee, on June 15, 1972, made his report to the State Board, with findings of fact and recommendation concerning the approval of the transfer.

The Referee in his report to the State Board recommended to the State Board of Education that the Sackett Hills area be transferred to the adjoining Summit County Boston-Northampton School District. The State Board adopted the recommendation of the Referee and passed a resolution of approval as required under the statute to cause the transfer of the residents' area to the adjoining school district.

The Akron Board was required by Ohio Rev.Code § 3311.24, within thirty days after receiving the State Board's decision, to adopt a resolution transferring the territory. The Akron Board has failed and refused to comply with the statute. It did not avail itself of its remedy under Sections 2506.01 and 2506.04 Rev.Code of Ohio (1972 Supp.), but instead it filed the present suit in the District Court seeking to invalidate the transfer.

As before stated, the complaint charged that the transfer will alter the existing racial balances in Akron Public Schools, in violation of the Fourteenth Amendment to the Constitution. The complaint further alleged that only six

pupils from Sackett Hills were attending Akron's public schools. Assuming, but not admitting, that the Fourteenth Amendment requires the balancing of races in the public school system, it would appear here that Akron's loss of six pupils could well be characterized as de minimus.

It would further appear from the factual findings of the Referee included in the record that valid, nonracial grounds motivated his recommendation for the transfer of the territory. These grounds included consideration of the distance of the territory from the Akron public schools, the geography of the territory, the hills, and roads leading to such schools, and the danger to the pupils involved in the busing of the children long distances to the Akron schools. The findings also took into account the miserably poor busing service provided by the Akron School Board, as a consequence of which the six children arrived at the Akron schools late and left early, and the inordinate amount of time involved.

However, we need not decide the merits of the case, because it was disposed of on the issues of standing and jurisdiction.

The District Court was eminently correct in ruling that a body politic and corporate of a state is not a "person" within the meaning of, and subject to, the Civil Rights Act. Congress never intended to make state political subdivisions amenable to the Act. City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Moor v. County of Alameda, 411 U.S. 693, 93 S. Ct. 1785, 36 L.Ed.2d 596 (1973); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Johnson v. City of Cincinnati, 450 F.2d 796, 798 (6th Cir.

1971). The District Court therefore lacked jurisdiction to entertain the action under Section 1983.[1]

It is obvious that 42 U.S.C. § 1983 (1970), applies only to acts committed under color of state law by a *person*, and the State Board is not a *person*. The fact that Conrad C. Ott has joined as party plaintiff does not change the situation since the State Board is still not a person.

28 U.S.C. § 1343(3) (1962) does not help the plaintiffs because they are not asserting any violation of their own constitutional rights but are attempting to assert rights of some school children against other school children who will be affected thereby. As to the rights of the school children, the School Board has no standing to assert them.

We need not speculate whether plaintiffs might have brought suit under 28 U.S.C. § 1331 (1966). No such claim was made in the District Court, or here. To invoke Section 1331 plaintiffs would have been required to plead that the matter in controversy exceeded the amount or value of $10,000, exclusive of interest and costs, and arose under the Constitution of the United States. The Court found that the Akron Board had not established that it sustained any damage as a result of the transfer. The only aspect of the transfer which arguably involves money is the tax base which was transferred from Akron School District to Boston-Northampton School District. This loss, however, would be compensated by the fact that the Akron School Board no longer would be required to educate the children from the transferred area. The net result is a "wash" and there is no monetary amount in controversy. No doubt this is the real reason why counsel for plain-

1. Unlike *City of Kenosha, supra,* where the Attorney General was a party defendant, no officer of the State of Ohio is a party to this case.

Judge Edwards' opinion recognized that the rule of these cases might be extended to school boards so as to deprive the Akron Board of Education of standing to sue.

(Opin. pp. 9, 10). In my opinion it is not necessary to extend the rule, as there is no question but that state agencies are political subdivisions of the state.

The rule in these cases cannot be circumvented by suing the political subdivisions and joining with them as parties defendant their members and employees individually.

tiffs did not attempt to utilize Section 1331.

Furthermore, plaintiffs' action does not arise under the Fourteenth Amendment to the Constitution. The District Court stated:

"While the Akron Board of Education is to be congratulated for its acceptance of its constitutional burden, it may not attempt to vindicate or preserve what are essentially the rights of the school children of Akron in this case."

In Sierra Club v. Morton, 405 U.S. 727 at 733, 92 S.Ct. 1361 at 1365, 31 L. Ed.2d 636 (1972), the Supreme Court held that standing to obtain judicial review of agency action was conferred only upon those who could show "that the challenged action had caused them 'injury in fact.'"

In United States v. Students, etc. (SCRAP), 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), a divided Court, in following *Sierra Club,* held that plaintiffs had alleged such injury in fact to themselves, although the Chief Justice and two Associate Justices disagreed.

In our case the Akron School Board and Superintendent Conrad Ott have alleged no injury to themselves. Their claim of possible, theoretical injury to some school children is highly speculative, uncertain, and in my opinion, ill founded.

Nor should an Appellate Court reverse a District Court which has rendered a correct decision, because of the possibility that upon remand additional necessary parties can be added who may or may not be able to present a justiciable claim. It is not our function to restructure plaintiffs' case.

If any of the school children have a claim for constitutional violation, the courts are wide open to receive such a claim brought by their parents or next friends. In our opinion the decision in the present case would not foreclose such action.

Neither the Akron School Board nor its Superintendent Ott have any stand-

ing to attack state legislation which they are charged by law with the duty to enforce. As well stated by Chief Judge Battisti in his opinion in the present case:

"Analogous situations do not support their claim. Municipal corporations have regularly been denied standing in the federal courts to attack state legislation as violative of the Federal Constitution. *E. g.,* Pawhuska v. Pawhuska Oil Co., 250 US 394 [39 S.Ct. 526, 63 L.Ed. 1054] (1919); Trenton v. New Jersey, 262 US 182 [43 S.Ct. 534, 67 L.Ed. 937] (1923); Williams v. Mayor, 289 US 36 [53 S.Ct. 431, 77 L.Ed. 1015] (1933). While administrative or executive officers have standing to defend the constitutionality of legislation which he is charged with administering or enforcing, *e. g.,* Boynton v. Hutchinson Gas Co., 291 US 656 [54 S.Ct. 457, 78 L.Ed. 1048] (1934), a state official did not have the requisite interest necessary to vindicate the Federal Constitution so as to give him standing to attack the validity of a state statute which he was charged with enforcing. Smith v. Indiana, 191 US 138 [24 S.Ct. 51, 48 L.Ed. 125] (1903); Columbus & Greenville Ry. v. Miller, 283 US 96 [51 S.Ct. 392, 75 L. Ed. 861] (1931)."

For purposes of standing to assert claims of unconstitutional acts on the part of the State Board of Education, the Akron Board of Education is assuming two separate and distinct roles. The first role is that of a political entity asserting its own rights inherent in that entity; the second role is that of a group of public officials asserting the constitutional rights of others, namely, their constituents. In either role the Akron Board has no standing to assert that the transfer of the territory ordered by its political superior, the State Board of Education, was in contravention of the United States Constitution.

It has been recognized throughout the history of our legal system that there is

substantial distinction between the constitutional rights of private and public entities. In Dartmouth College v. Woodard, 4 Wheat. 518 (1819), the Supreme Court discussed the constitutional rights of political subdivisions, *vis-a-vis* actions of their political superior, the state itself. The Court explained that since political subdivisions, such as cities, towns and municipalities, are but creatures of the state, they have no rights independent of those expressly provided by the state. Such political subdivisions, therefore, can assert no "constitutional rights" in opposition to acts of the state. 4 Wheat. at 661.

In the present case the Legislature of Ohio has granted a right of appeal to the Common Pleas Court; it has not granted to a local School Board the right to sue its superior. The School Board therefore had no power or authority to institute action in the Federal Court to vitiate the action of its superior.

The principle has been reaffirmed and expanded in a substantial number of cases. *E. g.,* Williams v. Mayor of Baltimore, 289 U.S. 36, 53 S.Ct. 431, 77 L. Ed. 1015 (1933); Risty v. Chicago, R. I. & P. Ry., 270 U.S. 378, 390, 46 S.Ct. 236, 70 L.Ed. 641 (1926); Newark v. New Jersey, 262 U.S. 192, 43 S.Ct. 539, 67 L.Ed. 943 (1923); Trenton v. New Jersey, 262 U.S. 182, 43 S.Ct. 534, 67 L. Ed. 937 (1923); Worcester v. Worcester Consol. St. Ry., 196 U.S. 539, 25 S.Ct. 327, 49 L.Ed. 591 (1905).

In Trenton v. New Jersey, *supra,* the Court articulated the doctrine as follows:

"A municipality is merely a department of the state, and the state may withhold, grant or withdraw powers and privileges as it sees fit. However great or small its sphere of action, it remains the creature of the state exercising and holding powers and privileges subject to the sovereign will. See Barnes v. District of Columbia, 91 U.S. 540, 544, 545, 23 L.Ed. 440.

.    .    .    .    .    .

"The power of the State unrestrained by the contract clause or the Fourteenth Amendment, over the rights and property of cities held and used for 'governmental purposes' cannot be questioned." (262 U.S. at 187–188, 43 S.Ct. at 537).

It might be argued, however, that the instant case is distinguishable from the above line of cases in that the suit of the plaintiffs herein is against the State Board of Education (itself a political subdivision), rather than against the State Legislature. Such a distinction is not legally relevant for purposes of standing.[2]

In New Orleans v. New Orleans Water Works Co., 142 U.S. 79, 12 S.Ct. 142, 35 L.Ed. 943 (1891), the City of New Orleans sued the local Water Works Company on a contract to supply water. The company defended on the ground that legislation had effectively given it the power to break the contract, and therefore it had no liability. The position of the city was that if the Legislature had given the company such power, it was an unconstitutional act (in violation of the contract clause) and therefore there was no defense to the company. The Court accepted the company's defense, stating that, in effect, this was a suit by the city against the State Legislature on constitutional grounds, a suit that was not maintainable under traditional doctrine.

So too in the instant case, the suit, in effect, is against the State Legislature. The Legislature has expressly provided that the State Board of Education can transfer portions of school districts in the manner in which the transfer com-

---

2. It could be argued that this entire doctrine does not refer, technically, to "standing", but rather, it is concerned with a fundamental absence of power. However, we will accept Mr. Justice Frankfurter's characterization of the doctrine as one involving principles of standing. See Baker v. Carr, 369 U.S. 186, 290, n. 23, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (dissenting opinion).

plained of, was accomplished. Ohio Rev.Code, § 3311.24.[3]

Since the State Board complied with the legislative prescription, its actions are in effect sanctioned by the State Legislature, and the Akron Board of Education (as a political entity of the State of Ohio) cannot void the State Board's actions on constitutional grounds.

The second role in which the Akron Board could be said to be bringing this suit, as public officials asserting the constitutional rights of their constituent student body to attend nonsegregated schools, is equally invalid as a basis for standing.

In Smith v. Indiana, 191 U.S. 138, 24 S.Ct. 51, 48 L.Ed. 125 (1903), a public officer, a county auditor, attacked the constitutionality of a state mortgage exemption law. The Court held that the auditor, in his official capacity, could not attack the constitutionality of the exemption, stating:

> "It is evident that the auditor had no personal interest in the litigation. He had certain duties as a public officer to perform. The performance of those duties was of no personal benefit to him. Their non-performance was equally so. He neither gained nor lost anything by invoking the advice of the supreme court as to the proper action he should take. He was testing the constitutionality of the law purely in the interest of third persons, viz., the taxpayers, and in this particular the case is analogous to that of Caffrey v. Oklahoma, 177 U.S. 346, 20 S.Ct. 664, 44 L.Ed. 799. We think the interest of an appellant in this court should be a *personal and not an official interest,* and that the defendant, having sought the advice of the courts of his own State in his official capacity, should be content to abide by their

decision." (Emphasis added.) (191 U.S. at 149, 24 S.Ct. at 52).

The holding in *Smith* was reaffirmed thereafter until it apparently became sufficiently well-established to remove further argument. See Stewart v. Kansas City, 239 U.S. 14, 36 S.Ct. 15, 60 L.Ed. 120 (1915); Marshall v. Dye, 231 U.S. 250, 34 S.Ct. 92, 58 L.Ed. 206 (1913); Braxton County Court v. West Virginia, 208 U.S. 192, 28 S.Ct. 275, 52 L.Ed. 450 (1908). We perceive no compelling logic or reason to resurrect this antiquated issue.

The Akron Board of Education, as a group of public officials, cannot assert the constitutional rights of some of its constituency in opposition to not only the State Board but also to others of its constituency.

In Triplett v. Tiemann, 302 F.Supp. 1239 (D.Neb.1969), a number of local school districts brought an action against the State Board of Education, alleging that actions of the State Board pursuant to statutory authorization were unconstitutional. The Three-Judge Court held that the school districts had no standing to assert constitutional claims against the State Board of Education. The Court stated:

> "The plaintiff school districts are legally not subject to injury under the Equal Protection Clause. The Equal Protection Clause of the Fourteenth Amendment has no application to the acts of a State against its own political subdivisions. City of Trenton v. New Jersey, 262 U.S. 182–188, 43 S.Ct. 534, 67 L.Ed. 937 (1923); City of Newark v. New Jersey, 262 U.S. 192, 196, 43 S.Ct. 539, 67 L.Ed. 943 (1923); Williams v. Mayor & City Council of Baltimore, 289 U.S. 36, 40, 53 S.Ct. 431, 77 L.Ed. 1015 (1933). See also Annotation, 116 A.L.R. 1037." (302 F.Supp. at 1242).

---

3. This does not mean, of course, that the Akron Board was powerless to contest the actions of the State Board if it deviated from the legislative prescription. In fact, as previously pointed out, it had the right to a review of the decision of the State Board in the Common Pleas Court.

With this conclusion I agree.

The District Court distinguished Brewer v. Hoxie School District, 238 F. 2d 91 (8th Cir. 1956), Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), and Bartels v. Iowa, 262 U.S. 404, 43 S.Ct. 628, 67 L. Ed. 1047 (1923), and other cases relied on by the plaintiffs. I agree with the District Court that these decisions are not apposite.

It was wholly unnecessary for a School Board to assume to act for aggrieved children, in the place of their parents or legal guardians, and to take legal action in the Federal Court which might seriously affect the substantial rights of other children, in this case the children living in Sackett Hills who are suffering from the poor busing policy of the Akron Board.

Nor is it understandable why the Akron Board invoked a dubious remedy in the Federal Courts when it had an unquestioned right to appeal to the Common Pleas Court from the State Board's order of transfer and to assert there all of the claims which it is making in the Federal Court.

Controversies and disputes between state political agencies should properly be resolved in the state courts.

In recent years the Federal Courts have been inundated with actions brought under the Civil Rights laws. We think it is inadvisable for Federal Courts to get involved with disputes between state political agencies where plain and adequate remedies for their resolution are provided under state law. We followed this principle in Burks v. Perk, 470 F.2d 163 (6th Cir. 1972), cert. denied, 412 U.S. 905, 93 S.Ct. 2288, 36 L.Ed.2d 970 (1973). In that case we vacated an injunction issued by the District Court against the Mayor of Cleveland which enjoined the Mayor from conducting a hearing on charges for the removal of Civil Service Commissioners.

Three opinions have been filed in this appeal. In the opinion filed by Judge Pratt, he concurs in part with Judge Edwards' opinion, and dissents in part. As I interpret the opinions, Judge Pratt agrees with me that the Akron Board is not a person within the meaning of 42 U.S.C. § 1983 and 28 U.S.C. § 1343 (1970). If this is correct then the State Board, like the Akron Board, would not be amenable to the Civil Rights Act. Judge Pratt would remand to allow the plaintiffs to amend. Judge Pratt agrees with Judge Edwards that the plaintiffs have standing to sue and that the District Court had jurisdiction. Judge Edwards would reverse.

I do not concur in either a reversal or a remand. If the case is remanded the District Court is obligated to follow, as it did, the three decisions of the Supreme Court hereinbefore cited, holding that a state political subdivision is not amenable to actions under Section 1983. The District Court is likewise bound to follow the decisions of the Supreme Court holding that one state political subdivision or agency does not have the power and authority to sue another state agency for alleged constitutional violations.

It is clear to me that the Akron Board and Conrad C. Ott have alleged no "injury in fact" to themselves. They have no standing, power or authority to sue for alleged constitutional violation of the rights of other persons.

The Referee who heard the evidence sustained the transfer of the small area which would afford needed relief to six children, on non-racial grounds. It is ridiculous to contend that affording this relief affects the racial balance of the Akron School District to any material degree. Even if it did, it would not violate the constitutional rights of anyone.

As well stated by Chief Justice Burger in Swann v. Charlotte-Mecklenburg Board of Educ., 402 U.S. 1 at 24, 91 S. Ct. 1267 at 1280, 28 L.Ed.2d 554 (1971):

"If we were to read the holding of the District Court to require, as a matter of substantive constitutional right, any particular degree of racial balance or mixing, that approach

would be disapproved and we would be obliged to reverse."

The amended complaint does not state any claim upon which relief can be granted. The decision of the District Court is correct.

I would affirm.

