**BOARD OF EDUCATION OF THE MT. SINAI UNION FREE SCHOOL DISTRICT; Mt. Sinai Union Free School District; Peter C. Paciolla, Superintendent of Mt. Sinai Union Free School District; Nicholas C. DiPiazza, as President of the Board of Education of the Mt. Sinai Union Free School District and individually; Gail Litsch; Maureen Poerio; Board of Education of the Sewanhaka Central High School District; Sewanhaka Central High School District; Dr. George Goldstein, Superintendent of Sewanhaka Central High School District; and James Parla, as President of the Board of Education, Plaintiffs–Appellants,**

v.

**NEW YORK STATE TEACHERS RETIREMENT SYSTEM; H.N. Langlitz, in his capacity as Executive Director, New York State Teachers Retirement System; Richard E. Tehhaken, President; Richard F. Lindstrom, Vice President; Michael R. Corn; R. Michael Kraus; Lucy P. Martin; Joseph P. McLaughlin; S.J. Salenger; H. Carl**

**McCall; Ruth E. Williams; Iris Wolfson, in their capacity as members of the Board of Directors of the New York State Teachers Retirement System; Charles Golding; and William Conboy, Defendants–Appellees.**

No. 1275, Docket 94–9006.

United States Court of Appeals,
Second Circuit.

Argued Feb. 15, 1995.

Decided July 12, 1995.

Scott J. Steiner, New York City (Curt Rogg–Meltzer, Rogg–Meltzer, Steiner & Ebeling, New York City, of counsel), for plaintiffs-appellants.

Elizabeth Bradford, Asst. Atty. Gen. State of N.Y. (G. Oliver Koppell, Atty. Gen. State of N.Y., of counsel), for defendants-appellees.

Before: MINER and JACOBS, Circuit Judges.[*]

MINER, Circuit Judge:

Plaintiffs-appellants are the Mt. Sinai Union Free School District ("Mt. Sinai"), the Sewanhaka Central School District ("Sewanhaka"), the boards of education of the school districts, officials of the school districts, and citizen taxpayers of one of the districts. They appeal from a judgment entered in the United States District Court for the Eastern District of New York (Platt, then-Chief Judge) dismissing their amended complaint, pursuant to Fed.R.Civ.P. 12(b)(1), on the ground that none of the plaintiffs had standing to pursue the claims alleged in the complaint. The district court concluded that: (1) the school districts and their boards of education, as political subdivisions of the state, lack standing to challenge state legislation, (2) the taxpayer plaintiffs were to be considered state taxpayers and, as such, could not demonstrate adequate injury to support Article III standing, nor did they have standing under state law, and (3) the school-board officials lack the requisite personal stake in the outcome of the controversy to support standing. For the reasons that follow, we affirm the judgment of the district court.

## BACKGROUND

This case involves a challenge to the constitutionality of Chapter 666 of the Laws of 1990 of New York State ("Chapter 666"), a law aimed at reducing unfairness in the provision of pensions to public employees. It appears from the amended complaint that the two defendant teachers in this action, William Conboy and Charles Golding, were former members of the New York City Police Department. Accordingly, both had been members of the New York City Police Pension Fund and, upon retirement from the

Police Department, each became eligible for a pension from the Police Pension Fund. Like many retired police officers, the two men chose to pursue second careers. Conboy was employed as a teacher by Mt. Sinai beginning in 1979, and Golding was employed as a teacher by Sewanhaka beginning in 1971. When they were hired as teachers, state law permitted them to draw their pensions from the Police Pension Fund only on the condition that they not become members of the New York State Teachers' Retirement System ("NYSTRS"), the pension fund established for teachers in New York State schools.

In 1990, the legislature passed Chapter 666, which was designed to permit individuals like Conboy and Golding to receive a pension benefit that would reflect all of their years in public service. Under the law, an individual who has retired from service in one part of the public sector and is reemployed in another, including a school district, may apply for relief under Chapter 666. Upon proper application, Chapter 666 requires the school district employing such an individual to make contributions to NYSTRS in the amount the school district would have made had the retiree been a member of the system throughout the entire period of his second employment.

In 1992, Conboy and Golding applied for and were granted the benefits provided under Chapter 666. Accordingly, NYSTRS billed their school district employers for the payments that would have been made had Conboy and Golding been NYSTRS members from the start of their employment as teachers. As a result, Mt. Sinai was instructed to pay $89,172 to NYSTRS on Mr. Conboy's behalf, and Sewanhaka was instructed to pay $93,563 on Mr. Golding's behalf.[1] The school districts refused to make the payments, and brought this suit in the

---

[*] The Honorable James L. Oakes of the United States Court of Appeals for the Second Circuit, who originally was a member of the panel, recused himself just prior to oral argument. The case is being decided by the remaining two judges of the panel, pursuant to Local Rule § 0.14(b). *See Murray v. National Broadcasting Co.*, 35 F.3d 45 (2d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 734, 130 L.Ed.2d 637 (1995).

1. Although Golding began his employment as a teacher about eight years before Conboy, Golding apparently suspended his police retirement benefits and joined NYSTRS in September of 1983. Therefore, his school district employer was billed for payments not made during the period 1971–1983.

district court to challenge the validity of Chapter 666.

The amended complaint was filed by three groups of plaintiffs: 1) the school districts that employ the two teachers and their boards of education; 2) officers and directors of those school districts and boards, namely Peter C. Paciolla, who is the Superintendent of Mt. Sinai, Nicholas C. DiPiazza, who is the President of the Board of Education of Mt. Sinai, Dr. George Goldstein, who is the Superintendent of Sewanhaka, and James Parla, who is the President of Sewanhaka; and 3) taxpayers of the Mt. Sinai School District, namely Gail Litsch, Maureen Poerio, and Nicholas DiPiazza. The defendants named in the complaint were various officers and directors of NYSTRS, in their official capacities, and the two teachers.

Upon the facts described above, the plaintiffs alleged violations of federal and state law. Plaintiffs alleged that Chapter 666 violates the Contracts Clause of the Constitution by impairing the contracts between the school districts and the teachers, that Chapter 666 violates the Contracts Clause by impairing the contracts between the plaintiffs and NYSTRS, and that Chapter 666 violates the Due Process Clause of the Fourteenth Amendment. The plaintiffs also pleaded various state-law claims, including violations of the state constitution, misapplication of Chapter 666, defects in the teachers' applications for benefits under Chapter 666, and a claim of conversion.

NYSTRS and its officers moved to dismiss the complaint for lack of subject matter jurisdiction, under Fed.R.Civ.P. 12(b)(1), on the ground that none of the plaintiffs has standing to maintain the action, and for failure to state a claim, under Fed.R.Civ.P. 12(b)(6).[2] The district court granted the defendants' motion on the ground that the plaintiffs lacked standing to bring suit. The court held that (1) the taxpayer plaintiffs were to be considered state taxpayers, rather than municipal taxpayers, and, as such, did not suffer a "concrete" injury sufficient to support standing; (2) the taxpayer plaintiffs did not have standing under Article 7-A of the New York State Finance Law, which grants stand-

ing to challenge state expenditures, because the expenditures at issue would be made by school districts and not by the state; (3) the plaintiff school district officials lacked a sufficient injury to give rise to standing; and (4) the plaintiff school districts and boards of education lacked standing to contest the state legislation because they were creatures of the state legislature.

In this appeal, plaintiffs-appellants challenge only that portion of the district court's judgment in which the court determined that the taxpayers and the officials of the school districts and of the boards of education lack standing. They do not challenge the determination that the school districts and boards of education lack standing.

## DISCUSSION

### I. Standard of Review

 This court reviews the dismissal of a complaint for lack of standing *de novo. See Thompson v. County of Franklin,* 15 F.3d 245, 249 (2d Cir.1994). In exercising our review, we must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Id.* (quoting *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975) (internal quotation marks omitted)). Nonetheless, "it is the burden of the party who seeks the exercise of jurisdiction in his favor, clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 608, 107 L.Ed.2d 603 (1990) (citations and internal quotation marks omitted). We conclude that, viewed under these standards, the plaintiffs have failed to establish that they have standing under any of the theories that they invoke.

### II. Taxpayer Standing

The taxpayer plaintiffs contend that they have standing to challenge Chapter 666 under the taxpayer standing doctrine enunciated in *Frothingham v. Mellon,* 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923) and its

---

**2.** The teachers Conboy and Golding defaulted and did not appear in this litigation.

progeny. They further contend that they have standing as taxpayers under a state statute.

### a. Common–Law Taxpayer Standing

■ It is well settled that whether a plaintiff has standing in his capacity as a taxpayer turns largely on the sovereign whose act he challenges. A federal taxpayer, for example, cannot rest standing to challenge acts of Congress, or acts taken by other arms of the federal government, on the theory that the challenged conduct injures him through its effect on his taxes. This is so because the federal taxpayer's "interest in the moneys of the Treasury ... is shared with millions of others [and] is comparatively minute and indeterminable; and [because] the effect upon future taxation, of any payment out of the funds ... [is too] remote, fluctuating and uncertain." *Frothingham,* 262 U.S. at 487, 43 S.Ct. at 601. As a general matter, therefore, standing premised on federal taxpayer status fails for want of a concrete injury; an abstract injury shared by the public does not suffice. *See Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 219–221, 94 S.Ct. 2925, 2931–32, 41 L.Ed.2d 706 (1974). *Cf. Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) (delineating limited exception to the bar against federal taxpayer standing).

■ State taxpayers, like federal taxpayers, do not have standing to challenge the actions of state government simply because they pay taxes to the state. In *Doremus v. Board of Educ. of Hawthorne,* 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952), the Supreme Court likened state taxpayers to federal taxpayers for the purposes of standing, and held that a state taxpayer's action only amounts to a case or controversy when it is a "good-faith pocketbook action," in which the taxpayer alleges injury to a "direct and particular financial interest." *Id.* at 434–35, 72 S.Ct. at 398; *see also ASARCO Inc. v. Kadish,* 490 U.S. 605, 613, 109 S.Ct. 2037, 2043, 104 L.Ed.2d 696 (1989) (Kennedy, J., joined by three justices) ("[W]e have likened state taxpayers to federal taxpayers, and thus we have refused to confer standing upon a state taxpayer absent a showing of 'direct injury....'"). We note, however, that the lower courts have employed differing interpretations of *Doremus* in regard to the question of taxpayer standing. *Compare Colorado Taxpayers Union, Inc. v. Romer,* 963 F.2d 1394, 1402–03 (10th Cir.1992) (requirements for federal and state taxpayer standing the same), *cert. denied,* —— U.S. ——, 113 S.Ct. 1360, 122 L.Ed.2d 739 (1993) and *Taub v. Kentucky,* 842 F.2d 912, 918 (6th Cir.) (same), *cert. denied,* 488 U.S. 870, 109 S.Ct. 179, 102 L.Ed.2d 148 (1988) *with Hoohuli v. Ariyoshi,* 741 F.2d 1169, 1180 (9th Cir.1984) (state taxpayer standing found where each plaintiff alleged "status as a taxpayer" and identified "amounts of money appropriated" for challenged actions). It seems to us that the "direct and particular" interest referred to in *Doremus* requires more than the mere payment of taxes alleged here.

However, while the foregoing rules present substantial obstacles to taxpayers who challenge federal or state actions, a taxpayer who challenges municipal actions stands on a different footing for reasons explained by the *Frothingham* Court:

> The interest of a taxpayer of a municipality in the application of its moneys is direct and immediate, and the remedy by injunction to prevent their misuse is not inappropriate.... The reasons which support the extension of the equitable remedy to a single taxpayer in such cases are based upon the peculiar relation of the corporate taxpayer to the corporation, which is not without some resemblance to that subsisting between stockholder and private corporation.

262 U.S. at 486–87, 43 S.Ct. at 601 (citations omitted). In reliance upon this passage, this court has concluded that a municipal taxpayer has standing to challenge allegedly unlawful municipal expenditures. *See United States v. City of New York,* 972 F.2d 464, 470–71 (2d Cir.1992). In *City of New York,* we were presented with a municipal taxpayer's challenge to New York City's action in entering into certain contracts, in alleged violation of state law. We concluded that, under *Frothingham,* the relationship of a municipal taxpayer to the municipality is presumed to be sufficiently "direct and immedi-

ate" to confer standing upon a taxpayer who challenges a municipal activity involving a " 'measurable appropriation or loss of revenue.' " *Id.* at 470 (quoting *District of Columbia Common Cause v. District of Columbia,* 858 F.2d 1, 5 (D.C.Cir.1988)); *see also Freedom From Religion Found., Inc. v. Zielke,* 845 F.2d 1463, 1469–70 (7th Cir.1988) (municipal taxpayer standing available to challenge improper use of tax revenues).

■ Unlike in *City of New York,* the taxpayer plaintiffs' challenge here is directed at a state, rather than a municipal, action. Plaintiffs nonetheless argue that, although they challenge an action of the state legislature, they are being injured by an unlawful expenditure of municipal funds, and they therefore have standing as municipal taxpayers. In support of this position, they rely upon *Gwinn Area Community Schools v. Michigan,* 741 F.2d 840 (6th Cir.1984), where the court held that municipal taxpayers had standing to challenge a state law that would adversely impact the municipal fisc. Under plaintiffs' theory, whether a taxpayer has standing would turn not on the governmental unit whose act is challenged, but simply on the governmental unit whose funds were affected by the challenged action.

■ We believe that such a rule is not supported by the cases establishing taxpayer standing, and thus decline to extend the availability of municipal taxpayer standing to actions where a municipal taxpayer challenges an expenditure of municipal funds mandated by state law. As is evident from *City of New York,* 972 F.2d at 470, one of the central premises of municipal taxpayer standing is that the taxpayer's suit be brought against *a municipality.* Here, the taxpayers do not rely on a "peculiar relation" with the municipality, *see Frothingham,* 262 U.S. at 486–87, 43 S.Ct. at 601. Indeed, this suit was not brought against a municipality, but against a state. Accordingly, the plaintiff taxpayers do not have standing as taxpayers to bring this suit, and the district court properly granted the motion to dismiss as to the claims brought under the common-law theory of taxpayer standing.

*b. Statutory Standing*

■ The municipal taxpayer plaintiffs also contend that they have standing as taxpayers to challenge Chapter 666 under § 123–b of Article 7–A of the New York State Finance Law. That statute confers standing on citizen taxpayers to bring an action

> against an officer or employee of the state who in the course of his or her duties has caused, is now causing, or is about to cause a wrongful expenditure, misappropriation, misapplication, or any other illegal or unconstitutional disbursement of state funds or state property.

Whether or not this provision would give the taxpayer plaintiffs standing, § 123–c of Article 7–A also provides that:

> An action pursuant to this article *shall* be brought in the *supreme court* in any county wherein the disbursement has occurred, is likely to occur, or is occurring, or in the county in which the state officer or employee has his or her principal office. (emphasis supplied).

Thus, actions under this statute are, by the statute's own terms, restricted to state fora, and may not be brought in federal court.

*III. Standing of School District and Board Officials*

■ The plaintiffs also challenge the district court's determination that the officials of the school districts and the school boards, acting in their official capacities, did not have standing to challenge Chapter 666. We agree with the district court.

The basis for the contention of plaintiff officials that they have standing is *Board of Educ. v. Allen,* 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968). That case involved a suit brought by the majority of a New York City school board to challenge a New York statute that required public school authorities to lend textbooks to all students, including students attending parochial schools. *Id.* at 239–40, 88 S.Ct. at 1924–25. The plaintiff board members claimed that the statute violated the Establishment Clause of the federal Constitution. In a footnote, the Court noted that the defendants had abandoned any chal-

lenge to the plaintiffs' standing, but went on to state:

> [The school board members] have taken an oath to support the United States Constitution. Believing [the statute at issue] to be unconstitutional, they are in the position of having to choose between violating their oath and taking a step—refusal to comply with [the law]—that would be likely to bring their expulsion from office and also a reduction in state funds for their school districts. There can be no doubt that [the board members] thus have a "personal stake in the outcome" of this litigation. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

*Id.* at 241 n. 5, 88 S.Ct. at 1925 n. 5 (parallel citations omitted); *see also Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 544 n. 7, 106 S.Ct. 1326, 1333 n. 7, 89 L.Ed.2d 501 (1986) (applying *Allen* but finding no standing). In reliance upon *Allen*'s "dilemma" theory of standing, this court has held that the City Social Services Commissioner had standing to pursue constitutional claims against the state of New York where he believed that implementing a state-mandated work project would compel him to violate his oath of office by abrogating the Equal Protection rights of public assistance recipients. *See Aguayo v. Richardson*, 473 F.2d 1090, 1100 (2d Cir.1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974); *see also City of New York v. Richardson*, 473 F.2d 923, 933 (2d Cir.) (mayor and commissioner of social services of City of New York have standing to challenge state and federal laws), *cert. denied*, 412 U.S. 950, 93 S.Ct. 3012, 37 L.Ed.2d 1002 (1973); *Akron Bd. of Educ. v. State Bd. of Educ.*, 490 F.2d 1285, 1291 (6th Cir.), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974).

Here, however, the plaintiff officials have failed to recognize that "[i]t is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute," *Warth*, 422 U.S. at 518, 95 S.Ct. at 2215. Plaintiffs do not allege that compliance with state law will require them to violate their oaths to act constitutionally; the burden of the complaint is that *others* (those who

adopted and signed the legislation) violated *their* oaths by impairing the contract rights of the boards of education. Plaintiffs' claims also fail because nowhere in the complaint do they allege that their positions as officials or funding for their schools is in jeopardy if they refuse to implement Chapter 666, and no such allegation appears anywhere in the record that was before the district court. In contrast, the plaintiffs in *Allen* had alleged in their complaint that a loss of their jobs and state funding was likely if they refused to comply with the state law. *See* 392 U.S. at 240, 88 S.Ct. at 1925. Moreover, even in this court, the plaintiffs do not contend that any actual threat has been made to remove them from their positions, or that any realistic threat of harm to them exists if they fail to implement Chapter 666. Accordingly, even if we were to assume that plaintiffs fear that they might violate their constitutional oaths, they have failed to demonstrate that they are presented with the dilemma that gave rise to standing in *Allen* and *Aguayo*.

It is true that, in their brief in this court, plaintiffs describe a number of vague untoward harms that might befall them, such as interference with the performance of "their fiduciary and statutory duty," interference with their "fully staffing their schools," a "direct impact upon [their] ability ... to govern," and the fact that they will be "held ultimately accountable when the community under their supervision is damaged." These alleged harms do not provide plaintiffs with *Allen* standing for two reasons. For one, unlike in *Allen*, these harms allegedly will result from compliance with Chapter 666, rather than from a refusal to comply. Second, we conclude that these harms simply are too speculative and too insubstantial to support standing. *Cf. Clarke v. United States*, 705 F.Supp. 605, 608 (D.D.C.1988) (where refusal to obey law would lead to "almost certain loss of ... salar[y] and staff[ ]," injury sufficient to provide standing under *Allen* ), *aff'd*, 886 F.2d 404 (D.C.Cir. 1989), *vacated as moot*, 915 F.2d 699 (D.C.Cir.1990).

Doubtless, many officials believe that mandated expenditures are wasteful or counterproductive; but it is difficult to see how

compliance with a state law mandate, however foolish the law is, would violate plaintiffs' "fiduciary and statutory duty," or why the public responsibility of public officials in these circumstances cannot be discharged in the political arena. In *Board of Supervisors of Warren County v. Virginia Dep't of Social Servs.*, 731 F.Supp. 735 (W.D.Va.1990), plaintiff officials challenged a federal formula under which the State was required to distribute federal money in a way allegedly unconstitutional under both the Equal Protection Clause and the Due Process clauses. In rejecting standing under *Allen*, the district court for the Western District of Virginia noted:

> The state action does not place the plaintiffs in any conflict, certainly not any conflict with a duty to uphold the constitution; it merely gives them less money than they would like with which to provide services. While the court recognizes the problems that dwindling funds have created for local governments, they are not problems which give the present plaintiffs a sufficiently personal stake in the outcome of this action.

*Id.* at 743. The plaintiffs in this case are faced with a problem that confronts all officials having limited and restricted resources available to serve their constituencies.

We thus conclude that the plaintiff officials, having failed to allege a realistic threat that they will lose their positions or substantial funding for their local operations if they refuse to comply with Chapter 666, are not presented with a dilemma that gives them standing to challenge the law. Therefore, the district court properly dismissed the claims brought by the plaintiff officials.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.